**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BODY XCHANGE SPORTS CLUB, LLC, a California Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>ZURICH AMERICAN INSURANCE COMPANY, a New York corporation; and DOES 1-25, inclusive,<br><br>Defendants. | Case No. 1:20-CV-01518-JLT-CDB<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS<br><br>(Doc. 15) |

Body Xchange Sports Club, LLC initiated this action to recover lost business income caused by having to suspend operations pursuant to government closure orders issued to mitigate the spread of the COVID-19 pandemic. (Doc. 1-1 at 4-25.) Body Xchange claims that Zurich American Insurance Company breached its insurance contract and breached the implied covenant of good faith and fair dealing by refusing coverage for the lost business income. (*Id.*) On May 12, 2021, Zurich filed a motion for judgment on the pleadings seeking dismissal of all claims. (Doc. 15.) For the reasons set forth below, the Court **GRANTS** Zurich's motion.

## I. FACTUAL BACKGROUND

Body Xchange owns and operates six fitness centers in Bakersfield, California. (Doc. 1-1 at 13, ¶ 36.) On March 19, 2020, in response to the rapid growing COVID-19 pandemic, the

governor of California issued a stay-at-home order that required the closure of any non-essential businesses. (*Id.* at 15-16, 255-56.) On April 2, 2020, the public health officer of Kern County ordered all gyms and fitness centers to remain closed as part of the government's efforts to slow the spread of COVID-19. (*Id.* at 16, ¶ 55, 258-60.) Body Xchange, as a non-essential business, complied with these orders and ceased its operations until June 8, 2020, when the government permitted the reopening of fitness centers. (*Id.* at 16-17.)

Body Xchange entered into an insurance agreement with Zurich that provided coverage from September 3, 2019 to September 3, 2020. (Doc. 1-1 at 9, ¶ 20.) The insurance policy included several coverage provisions, two of which Body Xchange asserts as its basis for liability. First, Body Xchange alleges the Business Income provision provides coverage for lost income due to the government ordered closures. (*Id.* at 9-11.) The Business Income provision states that Zurich will pay for lost business income sustained due the suspension of operations caused by "direct physical loss of or damage to property" at Body Xchange's premises. (*Id.* at 171.) The policy limits coverage to loss or damage caused by a "Covered Cause of Loss." (*Id.*) The definition of Covered Cause of Loss includes all risks except those explicitly excluded under the policy. (*Id.* at 180.)[1] Second, Body Xchange asserts coverage under the Civil Authority provision which reimburses Body Xchange for actual losses sustained by an action of civil authority that prohibits access to their properties if the civil authority action was taken as a result of damage within one mile of Body Xchange's property and was taken in response to dangerous physical conditions resulting from damage or a Covered Cause of Loss that impedes access. (*Id.* at 12, 172.) The policy contains an exclusion for any damage or loss caused by a virus. (*Id.* at 192.)

On March 31, 2020, Body Xchange tendered a claim under its insurance policy to Zurich for "business interruption loss resulting from the government-ordered closure of its fitness centers." (Doc. 1-1 at 17, ¶ 61.) After a limited exchange with a claim adjuster, Zurich sent Body Xchange a letter denying coverage, explaining the risk of loss was excluded under the "Exclusion

---

[1] The insurance policy at issue appears in three places on the record—once attached with the complaint and twice attached with Zurich's motion for judgment on the pleadings. Because the parties do not dispute the authenticity of any of these copies nor assert any inconsistency among them, the Court will refer to the version as submitted with the complaint for the sake of consistency.

2

of Loss Due to Virus or Bacteria." (*Id.* at 17-20; 262-66.) Body Xchange contends Zurich's denial constitutes a breach of contract and a breach of the implied covenant of good faith and fair dealing. (*Id.* at 20-24.)

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 12(c) provides that: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." A motion for judgment on the pleadings "challenges the legal sufficiency of the opposing party's pleadings and operates in much the same manner as a motion to dismiss under Rule 12(b)(6)." *Morgan v. Cnty. of Yolo*, 436 F. Supp. 2d 1152, 1154-55 (E.D. Cal. 2006), aff'd, 277 F. App'x 734 (9th Cir. 2008). In reviewing a motion brought under Rule 12(c), the court "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the nonmoving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

The same legal standard applicable to a Rule 12(b)(6) motion applies to a motion brought under Rule 12(c). *See Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). Accordingly, "judgment on the pleadings is properly granted when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law." *Marshall Naify Revocable Trust v. United States*, 672 F.3d 620, 623 (9th Cir. 2012) (quoting *Fajardo v. Cnty. of Los Angeles*, 179 F.3d 698, 699 (9th Cir. 1999)); *see also Fleming*, 581 F.3d at 925 (stating that "judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law"). The allegations of the complaint must be accepted as true, and any allegations made by the moving party that contradict the allegations of the complaint are assumed to be false. *See MacDonald v. Grace Church Seattle*, 457 F.3d 1079, 1081 (9th Cir. 2006). The court also draws reasonable inferences in favor of the non-moving party. *See Ventress v. Japan Airlines*, 603 F.3d 676, 683 (9th Cir. 2010). However, the Court will enter judgment in favor of the movant, "when, taking all the allegations in the non-moving party's pleadings as true," the non-moving party fails to plead all required elements of the cause of action. *Id.* at 681; *see also Student Loan Marketing Assoc. v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).

### III.     REQUEST FOR JUDICIAL NOTICE

With its motion for judgment on the pleadings, Zurich filed a request for judicial notice of Body Xchange's insurance policy with Zurich (Doc. 15-1 at 276-524 (Exhibit B)); a hearing transcript from a lawsuit regarding insurance coverage for COVID-19 losses from the Southern District of New York (*id.* at 525-44 (Exhibit C)); a list and copies of unpublished federal and state decisions regarding similar COVID-19 insurance claims (*id.* at 545-904 (Exhibit D)); Governor Newsom's Executive Order N-33-20 (*id.* at 905-08 (Exhibit E)); and Kern County's April 2, 2020, Order of the Health Officer (*id.* at 909-13 (Exhibit F)). (Doc. 16.) Body Xchange did not oppose these requests. In reaching its decision, the Court does not rely upon Exhibits C and D, and therefore, will only address Zurich's request as to the parties' insurance policy and the two government orders.

Federal Rule of Evidence 201 permits a court to take judicial notice of any facts not subject to reasonable dispute and which may be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Even where judicial notice is not appropriate, on a motion for judgment on the pleadings, the Court may consider "material which is properly submitted as part of the complaint" or incorporated by reference into the complaint. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001); *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010); *Special Dist. Risk Mgmt. Auth. v. Munich Reinsurance Am., Inc.*, 562 F. Supp. 3d 989, 994 (E.D. Cal. 2021) (applying the incorporation by reference doctrine to a motion for judgment on the pleadings). Documents are properly incorporated into the complaint "in situations where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance." *Coto Settlement*, 593 F.3d at 1038; *see also United States v. Corinthian Colls.*, 655 F.3d 984, 999 (9th Cir. 2011).

First, with respect to the insurance policy, the Court may take judicial notice of the existence and terms contained within the agreement. Body Xchange attached the same policy with its complaint and does not dispute the authenticity or relevancy of the policy. (Doc. 1-1 at

4

35-253); *see also Carver v. Am. Family Mut. Ins. Co.*, 2022 WL 2239237, at *1 n.1 (E.D. Cal. June 22, 2022) (granting request for judicial notice of insurance agreement where plaintiff did not oppose the request and relied upon the agreement's contents in its complaint); *see also Granite Outlet, Inc. v. Harford Cas. Ins. Co.*, 190 F. Supp. 3d 976, 984-85 (E.D. Cal. 2016) (taking judicial notice of insurance policy attached to a motion to dismiss because plaintiff's claims "necessarily rely" on the policy, plaintiff refers to it "extensively" in the complaint, and plaintiff submitted a version of the same policy with its complaint). The doctrine of incorporation also permits the Court to consider the policy and its contents because Body Xchange submitted it as material with the complaint and referred to extensively as part of its claims for relief. *See 730 I St. Invs., LLC v. Evanston Ins. Co.*, 2019 WL 1869851, at *1 (E.D. Cal. Apr. 25, 2019).

Second, with respect to Governor Newsom's and Kern County's closure orders, a court may take judicial notice of the orders and decisions of other courts and administrative agencies. *Kurtcu v. U.S. Parking Inc.*, 2008 WL 2445080, at *2 (N.D. Cal. June 16, 2008) (citing *Papai v. Harbor Tug & Barge Co.*, 67 F.3d 203, 207 (9th Cir. 1995) (overruled on other grounds). The orders issued by Governor Newsom and Kern County are "matters of public record" and properly subject to judicial notice. *See W. Coast Hotel Mgmt., LLC v. Berkshire Hathaway Guard Ins. Co.*, 498 F. Supp. 3d 1233, 1237-38 (C.D. Cal. 2020). Neither party disputes the existence, authenticity, or relevancy of these orders. Indeed, Body Xchange attached the same orders to its complaint and depends on them for the basis of its claims. (Doc. 1-1 at 255-60.) The Court may consider the government closure orders as material submitted with and incorporated into the complaint and may take judicial notice of their contents. Accordingly, the Court **GRANTS** Zurich's request for judicial notice as to Exhibits B, E, and F, and **DENIES as moot** the request with respect to Exhibits C and D.

### IV.   DISCUSSION

Body Xchange's complaint sets forth two claims: breach of contract and breach of the implied covenant of good faith and fair dealing. (Doc. 1-1 at 20-24.) To allege a breach of contract claim in California, Body Xchange must establish: (1) the existence of a contract, (2) Body Xchange's performance (or excuse for nonperformance) under the contract, (3) Zurich's

5

breach of the contract, and (4) damages resulting from Zurich's breach. *See Richman v. Hartley*, 224 Cal. App. 4th 1182, 1186 (2014). The parties' dispute centers around the existence of a contract, i.e., whether the coverages provided in the insurance policy include the losses claimed by Body Xchange. (Doc. 18 at 9.) Under California law, the burden is on the insured to establish that a claimed loss "is within the basic scope of insurance coverage." *Aydin Corp. v. First State Ins. Co.*, 18 Cal. 4th 1183, 1188 (1998). "[O]nce an insured has made this showing, the burden is on the insurer to prove the claim is specifically excluded." *Id.* Body Xchange contends the Business Income provision and the Civil Authority provision each independently provide coverage for its losses. (Doc. 1-1 at 9-13.) Zurich, on the other hand, contends neither of these provisions apply to the business income losses due to the government closure orders and, even if they did, one of three exclusions under the policy (the Virus Exclusion, the Ordinance or Law Exclusion, or the Loss of Use Exclusion) bars Body Xchange's claims. (Doc. 15 at 26-29.) The outcome of Zurich's motion, therefore, depends on the interpretation of the coverage and exclusions provisions.

Under California law, the "goal in construing insurance contracts, as with contracts generally, is to give effect to the parties' mutual intentions. If contractual language is clear and explicit, it governs." *Montrose Chem. Corp. v. Superior Court*, 9 Cal. 5th 215, 230 (2020). "The terms in an insurance policy must be read in context and in reference to the policy as a whole, with each clause helping to interpret the other." *Sony Comput. Ent. Am. Inc. v. Am. Home Assur. Co.*, 532 F.3d 1007, 1012 (9th Cir. 2008) (citing Cal. Civ. Code § 1641 and *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*, 5 Cal. 4th 854, 867 (1993)). If the terms are ambiguous, i.e., susceptible of more than one reasonable interpretation, the ambiguity should be resolved in favor of the insureds to protect their "objectively reasonable expectations." *Montrose*, 9 Cal. 5th at 230. "[I]n cases of ambiguity, basic coverage provisions are construed broadly in favor of affording protection, but clauses setting forth specific exclusions from coverage are interpreted narrowly against the insurer." *Minkler v. Safeco Ins. Co. of Am.*, 49 Cal. 4th 315, 322 (2010).

///

///

**A.      Business Income Coverage**

Body Xchange claims that the Business Income Coverage provision encompasses its lost income caused by the government closure orders which required Body Xchange to cease operations during the COVID-19 shutdown. (Doc. 1-1 at 9-11.) The Business Income provision ensures Body Xchange for:

> the actual loss of Business Income [it] sustain[s] due to the necessary "suspension" of [its] "operations" during the "period of restoration." The "suspension" must be caused by *direct physical loss of or damage to property* at premises . . . . The loss or damage must be caused by or result from a Covered Cause of Loss.

(Doc. 1-1 at 172.) The parties' primary dispute concerns the interpretation of the emphasized language and whether the government closure orders caused a "direct physical loss of or damage to property."[2]

       1. <u>Plain and Ordinary Meaning</u>

Because the disputed terms are not defined in the contract, they receive their plain and ordinary meaning. *See AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 822 (1990); *Amex Assurance Co. v. Allstate Ins. Co.*, 112 Cal. App. 4th 1246, 1252 (2003). Body Xchange argues that applying the plain meaning requires consultation of dictionaries to define each term individually. (Doc. 18 at 15.) However, because California courts and the Ninth Circuit have articulated explicit definitions for the same insurance terms, these definitions govern. *See Caribe Rest. & Nightclub, Inc. v. Topa Ins. Co.*, 533 F. Supp. 3d 938, 943 (C.D. Cal. 2021) (adopting state courts' definition of insurance policy terms). In *Mudpie Inc. v. Travelers Casualty Insurance Company*, the Ninth Circuit considered a nearly identical insurance provision in relation to the plaintiff's claims for lost business income resulting from COVID-19 closure orders. 15 F.4th 885 (9th Cir. 2021). The *Mudpie* policy stated that the loss of income due to a suspension of business "must be caused by direct physical loss of or damage to property at the described premises." *Id.* at

---

[2] The parties' arguments rely primarily on opinions from district court cases or persuasive authorities from courts outside this circuit and outside California. Since the parties' submitted their initial briefs in May and June 2021, the Ninth Circuit and the California courts of appeal have considered several cases with nearly identical insurance coverage provisions, asserting losses due to closures caused by COVID-19 and related government orders. (*See* Docs. 28, 33, 36.) Given the newly issued controlling authority, the Court's analysis relies primarily on these opinions, rather than addressing each of the persuasive, non-binding authorities cited in the briefs.

7

890. To construe the requirement of "direct physical loss of or damage to" the premises, the Ninth Circuit relied upon the interpretation set forth in *MRI Healthcare Center of Glendale, Inc. v. State Farm General Ins. Co.*, 187 Cal. App. 4th 766 (2010). *Mudpie*, 15 F.4th at 890-91. Under *MRI Healthcare*, "direct physical loss" requires "an actual change in insured property . . . occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory for future use or requiring that repairs be made to make it so." *MRI Healthcare*, 187 Cal. App. 4th at 779. "In other words, 'for loss to be covered, there must be a "distinct, demonstrable, physical alteration" of the property.'" *Mudpie*, 15 F.4th at 891 (citing *MRI Healthcare*, 187 Cal. App. 4th at 779).

Zurich likewise argues the *MRI Healthcare* standard applies to interpret the Business Income provision. (Doc. 15 at 18.) Body Xchange, on the other hand, contends that neither the insurance policy nor California law requires a physical alteration or a permanent loss to constitute a "direct physical loss of or damage to." (Doc. 18 at 12-15.) Body Xchange argues that, under *Hughes*, "'direct physical loss' includes perils that rob real and personal property of their use, often by rendering them unsafe, without necessarily altering their property's physical structure." (Doc. 18 at 10 (citing *Hughes v. Potomac Ins. Co. of D.C.*, 199 Cal. App. 2d 239, 248-49 (1962)).) In *Mudpie*, the Ninth Circuit considered and rejected this interpretation of the *Hughes* standard. *Mudpie*, 15 F.4th at 891. The Ninth Circuit explained that *Hughes* does not stand for the proposition that "direct physical loss" merely means rendered unsuitable, because the plaintiffs' home had in fact sustained "real and severe damage when the soil beneath it slid away." *Id.* Thus, a physical alteration to the ground beneath the dwelling had rendered the home "completely useless to its owners." *Hughes*, 199 Cal. App. 2d at 248. Accordingly, Body Xchange's argument that a direct physical loss includes rendered unsafe and unusable without a physical alteration to the property is unpersuasive.

Body Xchange also argues that "direct physical loss" and "damage" should be afforded different meaning because they are separated by the disjunctive term "or." (Doc. 18 at 19-24.) A recent California court of appeals decision rejected this argument and held that "physical loss or damage" unambiguously requires "some physicality to the loss or damage of the property—e.g., a

8

1  physical alteration, physical contamination, or physical destruction." *Musso & Frank Grill Co. v.*
2  *Mitsui Sumitomo Ins. USA Inc.*, 77 Cal. App. 5th 753, 758-59 (2022). On the other hand, an
3  opinion from the Fourth District considered the terms "loss" and "damage" separately but
4  nonetheless held that the modifiers "direct" and "physical" apply to both loss and damage. *Inns-*
5  *by-the-Sea v. Cal. Mut. Ins. Co.*, 71 Cal. App. 5th 688, 699-708 (2021). In *Inns-by-the-Sea*, the
6  court of appeals held that "direct physical damage" does not require "physical damage . . . where
7  the building has been rendered unusable by *physical forces*." [3] *Id.* 702 (emphasis in original)
8  (internal quotations omitted). Under this interpretation, coverage may include instances of
9  gaseous substances or pathogens (e.g., smoke, ammonia, odor, or asbestos) that are present on the
10 premises because they are physical forces that may render the premises uninhabitable or on
11 suitable for their intended purpose. *Id.* at 702-03. The court of appeals reasoned that the presence
12 of these substances necessitates physical rehabilitation or restoration efforts, such as to abate
13 asbestos or remove poisonous fumes. *Id.* at 703-04. Even still, government closure orders issued
14 in response to the COVID-19 pandemic did not constitute a "physical force" because the
15 inhabitability or unsuitability was not due the presence of the COVID-19 virus on the property
16 such that it necessitated physical restoration. *Id.* Accordingly, even if the Court applied the *Inns-*
17 *by-the-Sea* standard, Body Xchange's allegations that it closed only due to the government orders
18 and that COVID-19 was not physically present in its facilities do not constitute physical damage.
19 (Doc. 18 at 29; Doc. 1-1 at 16.)
20         Notably, the Ninth Circuit recognized that the hypothetical situation posed in *Inns-By-the-*
21 *Sea*, where the presence of COVID-19 in a facility *may* constitute physical damage, is not binding
22 authority. *Protégé Rest. Partners LLC v. Sentinel Ins. Co.*, 2022 WL 14476377, at *2 (9th Cir.
23 Oct. 25, 2022). Given the Ninth Circuit's explicit and controlling authority addressing the same
24 insurance policy terms, the Court must apply the interpretation that "direct physical loss or
25 damage" requires some physical alteration to the property. *Mudpie*, 15 F.4th at 891-92. Body

---

[3] With respect to "direct physical loss," *Inns-By-the-Sea* followed the Ninth Circuit's interpretation. The words "direct" and "physical" in the policy language preclude the argument that coverage arises due to an inability to use the premises without "physical impact"—i.e., "a physical alteration, physical contaminations, or physical destruction." *Inns by the Sea*, 71 Cal. App. 5th at 706-07.

1  Xchange's arguments that these terms are ambiguous and therefore should be construed in favor
2  of the insured also fail in light of these clearly articulated interpretations. *See Creative Artists*
3  *Agency, LLC v. Affiliated FM Ins. Co.*, 2022 WL 3097371, at *5 (C.D. Cal. July 27, 2022)
4  (finding no ambiguity in "physical loss or damage" because the Ninth Circuit defined the terms in
5  *Mudpie*).

6          2.   Context of Policy Affirms Physical Alteration Requirement

7  The context surrounding the Business Income provision reinforces the Court's conclusion
8  that "direct physical loss of or damage to" requires a physical alteration to the property.
9  *Producers Dairy Delivery Co. v. Sentry Ins. Co.*, 41 Cal. 3d 903, 916-17 (1986) ("An insurance
10 policy, like any other contract, must be construed in its entirety, with each clause lending
11 meaning to the other." (Internal quotations omitted)). The policy defines the time period for
12 which lost income is recoverable by the "period of restoration." (Doc. 1-1 at 171.) The period of
13 restoration begins either 72 hours after or immediately after (for Extra Expense Coverage) the
14 direct physical loss or damage, and ends when the property "should be repaired, rebuilt or
15 replaced with reasonable speed and similar quality" or when "business is resumed at a new
16 permanent location." (*Id.* at 179.) The limitation that "coverage extends only until covered
17 property is repaired, rebuilt, or replaced, or the business moves to a new permanent location"
18 indicates the policy only provides coverage for physical alterations needing such restoration.
19 *Mudpie*, 15 F.4th at 892. Mere loss of use does not necessitate something "that can be *physically*
20 fixed." *See Inns-by-the-Sea*, 71 Cal. App. 5th at 707 (emphasis in original).

21         3.   Whether Government Closure Orders Caused a Direct Physical Loss or Damage

22 Having determined that the Business Income provision requires a physical alteration for
23 coverage to apply, the Court turns to whether the government closure orders caused a physical
24 alteration to Body Xchange's premises. Body Xchange argues they suffered a direct physical loss
25 because of their inability to physically access their business. (Doc. 18 at 23.) In other words,
26 Body Xchange argues that the disjunctive form of the "direct physical loss of or damage to"
27 creates enough ambiguity that their inability to physically access their facilities constitutes a
28 direct physical loss, even without an alteration to the facilities' physical condition. (*Id.* at 18-25.)

Its most directly relevant authority is *Kingray Inc. v. Farmers Group Inc.*, in which the court held that a policy with identical language for business income coverage could include losses due to the COVID-19 pandemic and related closure orders. 523 F. Supp. 3d 1163, 1172-73 (C.D. Cal. 2021). The court held that "dispossession is a form of loss," relying primarily on *Hughes*. Although the *Kingray* decision and reasoning aligns squarely with Body Xchange's argument, the Ninth Circuit has since rejected this argument that temporary dispossession constitutes "physical loss or damage." *Mudpie*, 15 F.4th at 892 (explaining that *permanent* dispossession of property may establish physical loss or damage, but *temporary* suspension of access does not).

More precisely, the Ninth Circuit explicitly held that an inability to operate businesses as a result of government closure orders, issued to prevent the spread of COVID-19, does not cause a physical alteration. *Mudpie*, 15 F.4th at 888, 892 (holding "direct physical loss of or damage to" cannot be synonymous with "loss of use" because "California courts have carefully distinguished 'intangible,' 'incorporeal,' and 'economic' losses from 'physical' ones"); *see also Protégé Rest. Partners*, 2022 WL 14476377, at *2; *Out West Rest. Grp., Inc. v. Affiliated FM Ins. Co.*, 2022 WL 4007998, at *1 (9th Cir. Sep. 2, 2022) (holding that income losses due to government closure orders "do not inflict direct physical loss or damage to property"). The majority of California courts of appeal have reached the same conclusion. *See e.g.*, *United Talent Agency v. Vigilant Ins. Co.*, 77 Cal. App. 5th 821, 834 (holding loss of use from COVID-19 closures does not constitute physical damage); *see also Musso & Frank*, 77 Cal. App. 5th at 760 ("At this point, there is no real dispute. Under California law, a business interruption policy that covers physical loss and damages does not provide coverage for losses incurred by reason of the COVID-19 pandemic.").

At least one California court of appeals, however, has distinguished *Mudpie* while considering similar insurance claims. *Marina Pacific Hotel and Suites, LLC v. Fireman's Fund Ins. Co.*, 81 Cal. App. 5th 96 (2022). In *Marina*, the plaintiff had an identical business income coverage for suspension caused by direct physical loss or damage to the property. *Id.* at 99. The insured alleged the COVID-19 pandemic caused a physical alteration to the property because it "required the closure or suspension of operations . . . and caused them to incur extra expense, adopt remedial and precautionary measures 'to attempt to restore and remediate the air and

surfaces at the Insured Properties, dispose of property damaged by COVID-19 and limit operations at the Insured Properties.'" *Id.* at 102. Accepting the complaint's allegations as true, the court held the virus's alleged impact, that it "bonds to surfaces through physicochemical reactions . . . which transform the physical condition of the property" and required plaintiffs to "dispose of property damaged by COVID-19," constituted a physical alteration by an external force.[4] *Id.* at 108-09. The court recognized its conclusion was "at odds with almost all (but not all) decisions considering whether business losses from the pandemic" are covered by commercial property insurance. *Id.* at 109. Significantly, the plaintiff's policy also included specific coverage for "communicable disease event," creating recovery for costs necessary to repair or rebuild property destroyed or damaged by the communicable disease. *Id.* at 112. This provision reinforced the court's interpretation that a communicable disease, like a virus, could cause physical damage needing repair. *Id.*

The holding in *Marina* creates some suggestion that, even though Body Xchange did not allege the presence of COVID-19 on its premises, granting leave to amend could allow new allegations under which a valid claim may arise. On the other hand, *Marina* is not binding on this Court and is inconsistent with controlling precedent from the Ninth Circuit, in *Mudpie*, which indicates amendment would be futile. Even so, the Court need not resolve any potential conflict between these cases, because, as explained below, Body Xchange's policy contains a virus exclusion, directly contrasting the *Marina* plaintiff's policy, and which conclusively precludes any potential coverage.

**B.     Civil Authority Coverage**

In the complaint, Body Xchange also alleged coverage under the Civil Authority provision which insures income losses caused by the "action of civil authority that prohibits access to the described premises" if both apply: (1) the civil authority prohibits access "as a result of the damage, and the described premises are within that area but are not more than one mile from the

---

[4] To distinguish the case from federal decisions reviewing similar claims, the court of appeals emphasized the differing pleading standard applied by state courts which requires the acceptance of allegations as true "however improbable"; whereas the federal pleading standard considers the plausibility of the claims. *Marina*, 81 Cal. App. 5th at 109-10.

damaged property" and (2) the civil authority's action is in response to "dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage." (Doc. 1-1 at 172.) In its opposition to the motion for judgment on the pleading, Body Xchange provided no response to Zurich's arguments that claims premised on the Civil Authority provision should be dismissed. Zurich argues that Body Xchange "concedes that its Complaint is deficient . . . under the Civil Authority provision." (Doc. 22 at 12.) Body Xchange's failure to respond, standing alone, could warrant dismissal of all claims premised on the Civil Authority provision.  *See Hartranft v. Encore Cap. Grp., Inc.,* 543 F. Supp. 3d 893, 913 (S.D. Cal. 2021) ("[W]here a non-moving party fails to address an argument raised by the moving party in the opposition brief, the Court may consider any arguments unaddressed by the non-moving party as waived."); *see also Resnick v. Hyundai Motor Am., Inc.*, 2017 WL 1531192 at *22, (C.D. Cal. Apr. 13, 2017) ("Failure to oppose an argument raised in a motion to dismiss constitutes waiver of that argument."); *Tennyson v. Sacramento*, 2021 WL 2142733, at *3 (E.D. Cal. May 26, 2021) (dismissing claim for failure to respond to defendants' argument that the claim does not maintain a valid theory of liability).

Even assuming Body Xchange did not intend to waive its claims under the Civil Authority provision, the plain meaning of the policy terms preclude coverage. The provision provides coverage for restricted access to Body Xchange's facilities resulting from "damage" to the premises or to other property within one mile. (Doc. 1-1 at 172.) As described above, damage requires a physical alteration to the property, which the government closure orders did not cause. Although the Civil Authority provision does not state the damage must be "physical" as appears in the Business Income provision, the context of the whole provision contemplates a physical change in the property or surrounding the property that renders access to it unsafe. For example, the policy requires that the government order be issued in response to "dangerous physical conditions" or from a "Covered Cause of Loss that caused the damage," or to allow for the government's "unimpeded access to the damaged property." (*Id.*) The access to the area must be prohibited "as a result of the damage." (*Id.*) In *Out West*, the Ninth Circuit considered a similar civil authority provision that covered losses for government restrictions "provided such order is

the direct result of physical damage." *Out West*, 2022 WL 4007998, at *1. The stated purpose of the government closure order in *Out West* was to "protect and preserve the public health from, and prevent, the increasing transmission of COVID-19 in California," which did not qualify as an order issued because of physical damage. *Id.*

Similarly, the government orders that restricted Body Xchange's access also had a stated purpose "to ensure we mitigate the impact of COVID-19," "to bend the curve[] and disrupt the spread," "to slow the spread of COVID-19," and "to reduce the number of individuals who will be exposed." (Doc. 1-1 at 256, 259.) The orders do not reference or otherwise imply that an event occurred that caused damage to any property such that Body Xchange could not access its facilities. (*Id.*) Although Body Xchange's civil authority does not include the modifier "physical" as seen in the *Out West* provision, both provisions intend coverage resulting from government orders that respond to an event that caused property damage rather than contemplate government action that seeks to mitigate an on-going spread of a virus. *See Inns-by-the-Sea*, 71 Cal. App. 5th at 712 (holding no coverage under civil authority provision where government orders were issued "to prevent the spread of the pandemic, not because of any direct physical loss of or damage to property" (internal quotations omitted)). Given that Civil Authority provision's plain meaning does not seem to trigger coverage and Body Xchange's lack of an argument to the contrary or to support its claim, the Court finds Body Xchange does not state a valid claim under this provision.

**C.     Virus Exclusion**

Zurich contends that even if the Business Income provision or Civil Authority provision covers the losses caused by the government closure orders, the policy's Exclusion of Loss Due to Virus or Bacteria provision applies and prevents Body Xchange from maintaining any claim for relief. (Doc. 15 at 26-28.) In response, Body Xchange argues that it has an "all risk" policy, and Zurich carries the burden to show that any exclusion applies. (Doc. 18 at 27-30.) Body Xchange further contends that under the "predominate" or "efficient" theory of proximate cause, the government orders, not the COVID-19 virus caused their losses, making the Virus Exclusion inapplicable. (*Id.*) According to Body Xchange, the California courts did not define "predominate," and therefore, the dictionary definition of predominate—"having superior

14

strength influence, or authority"—should control. (*Id.*)

Body Xchange slightly mischaracterizes California's standard for evaluating whether an exclusion applies in cases involving concurrent causes. Generally, in an all-risk insurance policy, "all risks are covered unless specifically excluded in the policy." *Davis v. United Services Auto. Assn.*, 223 Cal. App. 3d 1322, 1328 (1990). The insurer bears the burden of showing an exclusion applies. *Aydin Corp.*, 18 Cal. 4th at 1188. When a combination of covered and specifically excluded risks caused the insured's loss, the loss is covered if a covered risk (i.e., a non-excluded risk) was the "efficient proximate cause." *Garvey v. State Farm Fire & Cas. Co.*, 48 Cal. 3d 395, 401-04 (1989). The efficient proximate cause means the "predominating cause" or the cause the "sets others in motion." *Id.* (quoting *Sabella v. Wisler*, 59 Cal. 2d 21, 27 (1963)). However, the California Supreme Court rejected a "but for" analysis, concluding that simply because an excluded risk was a contributing cause should not eliminate insurance coverage. *Id.* (explaining an "absurd" result would occur to "deny coverage even though an insured peril 'proximately' caused the loss simply because a subsequent, expected peril was also part of the chain of causation"). "The fact that an excluded risk contributed to the loss would not preclude coverage if such a risk was a remote cause of the loss." *Id.*

In *Mudpie*, the Ninth Circuit applied the efficient proximate cause standard and concluded that the COVID-19 virus was the predominate cause of business income loss that resulted from suspending operations pursuant to government closure orders. *Mudpie*, 15 F.4th 893-94. Even though the plaintiff, in *Mudpie*, argued that the government orders "most directly caused its injury" and did not allege the virus was present in it is storefront, the Ninth Circuit held that the COVID-19 pandemic set the stay-at-home orders in motion, and the plaintiff did not allege "an attenuated causal chain between the virus and [plaintiff's] losses." *Id.* Accordingly, the policy's exclusion for "loss or damage caused by or resulting from any virus . . ." precluded coverage. *Id.*; *see also Musso & Frank*, 77 Cal. Ap. 5th at 761 (holding the policy's exclusion for loss or damages caused by "any virus, bacterium or other micro-organism that induces or is capable of inducing physical distress, illness or disease" precluded coverage for lost income due to COVID-19 closure orders).

Body Xchange's recovery is also precluded by the policy's Virus Exclusion which excludes "loss or damage caused by or resulting from any virus . . . that induces or is capable of inducing physical distress, illness, or disease." (Doc. 1-1 at 192.) Though Body Xchange alleges that the State of California and County of Kern closure orders caused it to cease operations, not the presence of the COVID-19 virus (Doc. 1-1 at 16), the allegations in the complaint and corresponding exhibits make clear the predominate cause, which set those orders in motion, was the COVID-19 virus and worldwide viral pandemic. The complaint dedicates several paragraphs to the origin, rise, and public response to the COVID-19 pandemic in late 2019 and early 2020. (Doc. 1-1 at 14-15, ¶¶ 38-49.) It explains that California Governor Gavin Newson proclaimed a state of emergency, on March 4, 2020, "as a result of the threat of COVID 19." (*Id.* at 15, ¶ 47.) "On March 18, 2020, a representative from the Department of Public Health for the County of Kern contacted Body Xchange and ordered its fitness centers to close." (*Id.* at 16, ¶ 51.) The following day, Governor Newson issued Executive Order N-33-20, requiring all California residents to stay at home, excepting only essential operations. (*Id.* at 16, ¶ 52.) Executive Order N-33-20 expressly states that its purpose is "to establish consistency across the state in order to ensure that we mitigate the impact of COVID-19. Our goal is simple, we want to bend the curve, and disrupt the spread of the virus." (*Id.* at 256.) On April 2, 2020, Kern County issued an order requiring all gyms to stay closed. (*Id.* at 16, ¶ 55.) The Kern County order expressly states that it "is issued *as a result* of the World Health Organizations' [sic] declaration of a worldwide pandemic of COVID-19 disease, also known as 'novel coronavirus'" (emphasis added) and for the purpose of reducing "the number of individuals who will be exposed to COVID-10, and [] thereby slow[ing] the spread of COVID-19 in the county." (*Id.* at 259.)

Although the "the question of what caused the loss is generally a question of fact" (*State Farm Fire & Casualty Co. v. Von Der Lieth*, 54 Cal. 3d 1123, 1131 (1991)), Body Xchange cannot plausibly allege that the California and Kern County orders did not occur as a direct, unattenuated result of the COVID-19 pandemic. The closure orders clearly identify the COVID-19 pandemic as the reason for their issuance. Because the Ninth Circuit has determined COVID-19 to be the predominate and efficient cause of lost business income when operations ceased

pursuant to government closure orders, no question of law or fact remains.[5] *Mudpie*, 15 F.4th at 894; *see also Kingray*, 523 F. Supp. 3d at 1172 ("If there were no coronavirus, there would be no Covid-19 pandemic, no Covid-19-related shutdowns, and no need for Kingray to close, operate at a limited capacity, or modify the floor plan of its sports bar. This causal chain is straightforward and unbroken.").

Body Xchange's argument that it "was not aware of the presence of any COVID-19 virus at any of its facilities, nor had any customer or employee reported a COVID-19 infection" does not break the straightforward causal chain between the COVID-19 virus and the closure orders. (Doc. 1-1 at 16, ¶ 56.) In *Mudpie*, the plaintiff did not allege the presence of the COVID virus in its facility but did not "dispute that the Stay at Home Orders that impacted [plaintiff's] business where issued in response to the COVID-19 pandemic, and that point is not debatable." *Mudpie*, 15 F.4th at 894; *see also Best Auto Repair, Inc. v. Travelers Cas. Ins. Co. of Am.*, 2022 WL 2912090, at *6 (C.D. Cal. July 21, 2022) (rejecting plaintiff's argument that its claims needed to relate to "decontamination of the premises and not the containment of a pandemic" and finding the virus exclusion barred recovery); *Vida Skin Care, Inc. v. Sentinel Ins. Co. Ltd.*, 2022 WL 1498208, at *3 (C.D. Cal. May 6, 2022) ("Plaintiffs' suggestion that the Los Angeles and California shutdown orders did not necessarily occur as a result of the COVID-19 pandemic does not follow from the timeline established in their complaint and borders on ridiculous."). Likewise, Body Xchange did not allege and cannot plausibly allege the California and Kern Country orders were not issued directly in response to the presence of the COVID-19 virus in the community and growing pandemic. Thus, even if Body Xchange could plead facts to suggest coverage applies under either the Business Income or Civil Authority provisions, the Virus Exclusion bars any potential recovery.[6]

---

[5] The Court recognizes that the Eastern District of Pennsylvania, interpreting California law has held differently. *See Susan Spath Hegedus, Inc. v. ACE Fire Underwriters Ins. Co.*, 538 F.Supp.3d 457, 470 (E.D. Penn. 2021). In this case cited by Body Xchange, the court held the complaint's allegations that the closure orders, rather than the COVID virus, predominately caused the lost business income. (*Id.*) The plaintiff, like Body Xchange, alleged that the virus was not present on their property and reopened immediately after the order were lifted. (*Id.*) Although Body Xchange presents the same allegations, when persuasive authority contradicts binding case law, this Court must follow the Ninth Circuit's conclusions.

[6] Because the Virus Exclusion precludes coverage, the Court does reach the parties' arguments as to whether the

17

1  Because Body Xchange does not have a valid claim to benefits under the insurance policy,
2  its claim for breach of contract should be dismissed.

### D. Implied Covenant of Good Faith and Faith Dealing

Body Xchange also brings a claim for breach of the implied covenant of good faith and fair dealing. (Doc. 1-1 at 20-23.) It contends that Zurich breached this duty by, *inter alia*, depriving Body Xchange benefits under the policy, failing to conduct a fair and thorough investigation into Body Xchange's coverage claim, failing to conduct an investigation to determine the efficient proximate cause, and placing its own interests above Body Xchange's interests. (*Id.*) To adequately plead a claim for breach of the implied covenant of good faith and fair dealing, Body Xchange must show: "(1) benefits under the policy were withheld; and (2) the reason for withholding benefits was unreasonable or without proper cause." *Mudpie*, 15 F.4th at 893 n.6 (citing *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1151 (1990)). Because Body Xchange does not have a viable claim for any benefits under the insurance policy, Zurich did not beach its duty of good faith and fair dealing in its actions leading up to or in the denial of coverage. *See Brown v. Mid-Century Ins. Co.*, 215 Cal. App. 4th 841, 858 (2013) ("Because the policy did not cover the [insured's] claims ... [the insured does] not have a claim for breach of the implied covenant of good faith and fair dealing."); *see also Musso & Frank*, 77 Cal. App. 5th at 761 ("Because [plaintiff] cannot establish a breach of contract, it follows necessarily that it cannot prove a breach of the covenant of good faith and fair dealing."). Accordingly, Body Xchange's claim for breach of the implied covenant of good faith and fair dealing should also be dismissed.

### E. Leave to Amend

Courts have discretion both to grant a motion for judgment on the pleadings with leave to amend or to simply grant dismissal of causes of action rather than grant judgment as to them. *Lonberg v. City of Riverside*, 300 F. Supp. 2d 942, 945 (C.D. Cal. 2004) (citations omitted); *see also Pac. W. Group v. Real Time Solutions*, 321 Fed. App'x. 566, 569 (9th Cir. 2008). Generally, dismissal without leave to amend is proper only if it is clear that "the complaint could not be

---

Ordinance or Law Exclusion or Loss of Use Exclusion bars Body Xchange's claims.

saved by any amendment." *Intri-Plex Techs. v. Crest Grp.*, 499 F.3d 1048, 1056 (9th Cir. 2007) (citing *In re Daou Sys., Inc.*, 411 F.3d 1006, 1013 (9th Cir. 2005)); *see also Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint ... constitutes an exercise in futility").

Body Xchange did not request leave to amend or explain how amendment could save their claims. Regardless, given the indisputable evidence that the efficient proximate cause of Body Xchange's loss resulted from a virus, falling squarely within the Virus Exclusion, the Court finds that any amendment would be futile. *See Eur. Travel Agency Corp. v. Allstate Ins. Co.*, 2022 WL 1498207, at *3 (C.D. Cal. Apr. 27, 2022) (granting dismissal without leave to amend because the virus exclusion provision precludes coverage of losses "attributable to the COVID-19 virus or government orders issued in response to the COVID-19 pandemic").

## V.   ORDER

For the reasons set forth above:

1. Zurich's motion for judgment on the pleadings (Doc. 15) is **GRANTED**.
2. The clerk of court is directed to enter judgment in favor of Zurich.
3. The clerk of court is directed to close the case.

IT IS SO ORDERED.

Dated:   **December 30, 2022**

UNITED STATES DISTRICT JUDGE